IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00107

THE GEO GROUP, INC.,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA and
AMERICAN HOME ASSURANCE COMPANY,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff The GEO Group, Inc. ("GEO"), by and through its attorneys, Bradley A. Levin of LEVIN SITCOFF PC, and Matthew B. Weaver and Timothy P. Law of REED SMITH LLP, as its Complaint against Defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and American Home Assurance Company ("American Home") (collectively, "AIG"), and in support of the claims made below, alleges as follows:

### NATURE OF ACTION

1. This is an action for breach of contract and for declaratory relief and damages, pursuant to 28 U.S.C. §§ 2201 and 2202, arising out of AIG's refusal to defend GEO in two pending class actions (the Menocal case in Colorado and the Novoa case in California) which allege, among other things, false detention or imprisonment, malicious prosecution, and bodily injury arising out of or relating to alleged civil rights violations, allegations which trigger AIG's duty to defend GEO. For decades, AIG sold insurance to GEO in Florida for these types of liability

risks, and yet when called upon to provide the promised coverage, AIG has improperly refused to defend GEO in the Menocal Class Action and Novoa Class Action (as defined below).

## PARTIES, JURISDICTION AND VENUE

2. At all material times, GEO was and is a registered Florida corporation with its principal place of business in Boca Raton, Florida.

3. Upon informed belief, at all material times, National Union was and is a Pennsylvania corporation with its principal place of business in New York, New York.

4. Upon informed belief, at all material times, American Home was and is a New York corporation with its principal place of business in New York, New York.

5. National Union and American Home are subsidiaries of American International Group, Inc., which is among the largest property and casualty insurance conglomerates selling insurance in the United States. GEO has purchased its general liability insurance from AIG for decades, including the period from October 2, 2004 to October 1, 2018 at issue in this action.

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as the parties' respective states of incorporation and principal places of business are diverse, thus establishing diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in the District of Colorado because a substantial part of the events or omissions giving rise to GEO's claims occurred in this District; in particular, one of the underlying actions for which GEO seeks coverage is the Menocal Class Action, which was filed in this judicial district.

## THE INSURANCE POLICIES

8. This action seeks insurance coverage under commercial general liability ("CGL") policies sold to GEO from 2004 to 2018 by two AIG insurance companies: American Home (collectively, the "American Home Policies") and National Union (collectively, the "National Union Policies"). All of the American Home Policies and National Union Policies were issued and delivered to GEO in Florida where GEO maintains its principal place of business.

9. American Home sold a CGL policy to GEO bearing Policy No. GL 554-87-18 and covering the time period of October 2, 2004 to October 2, 2005.

10. American Home sold a CGL policy to GEO bearing Policy No. GL 575-01-93 and covering the time period of October 2, 2005 to October 2, 2006.

11. American Home sold a CGL policy to GEO bearing Policy No. GL 575-93-87 and covering the time period of October 2, 2006 to October 2, 2007.

12. American Home sold a CGL policy to GEO bearing Policy No. GL 159-55-91 and covering the time period of October 1, 2007 to October 1, 2008.

13. National Union sold a CGL policy to GEO bearing Policy No. GL 187-20-13 and covering the time period of October 1, 2008 to October 1, 2009.

14. National Union sold a CGL policy to GEO bearing Policy No. GL 650-63-73 and covering the time period of October 1, 2009 to October 1, 2010.

15. National Union sold a CGL policy to GEO bearing Policy No. GL 436-09-51 and covering the time period of October 1, 2010 to October 1, 2011.

16. National Union sold a CGL policy to GEO bearing Policy No. GL 244-97-16 and covering the time period of October 1, 2011 to October 1, 2012.

17. National Union sold a CGL policy to GEO bearing Policy No. GL 714-64-65 and covering the time period of October 1, 2012 to October 1, 2013. This policy is provided as an exemplar; a copy of the National Union 2012-2013 Policy is attached as **Exhibit A**.

18. National Union sold a CGL policy to GEO bearing Policy No. GL 681-93-75 and covering the time period of October 1, 2013 to October 1, 2014.

19. National Union sold a CGL policy to GEO bearing Policy No. GL 204-75-39 and covering the time period of October 1, 2014 to October 1, 2015 (the "National Union 2014-2015 Policy").

20. National Union sold a CGL policy to GEO bearing Policy No. GL 333-32-78 and covering the time period of October 1, 2015 to October 1, 2016.

21. National Union sold a CGL policy to GEO bearing Policy No. GL 515-24-62 and covering the time period of October 1, 2016 to October 1, 2017.

22. National Union sold a CGL policy to GEO bearing Policy No. GL 693-90-63 and covering the time period of October 1, 2017 to October 1, 2018.

23. GEO paid the full premiums for the American Home Policies and the National Union Policies and satisfied all other conditions to maintain the American Home Policies and the National Union Policies in full force and effect at all relevant times.

24. The American Home insurance policy for the 2004-2005 policy period contains the CGL coverage form CG 00 01 10 01. The American Home insurance policies for the 2005-2008 policy periods contain the CGL coverage form CG 00 01 12 04.

25. The National Union Policies for the 2008-2014 policy periods contain the CGL coverage form CG 00 01 12 07. The National Union Policies for the 2014–2018 policy periods

contain the CGL coverage form CG 00 01 04 13.

26. Under Coverage A, the American Home Policies and the National Union Policies obligate American Home and National Union to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' …during the policy period" and "caused by an 'occurrence.'"  American Home and National Union are further obligated to "defend the insured against any 'suit' seeking those damages."

27. Under Coverage B, the American Home Policies and the National Union Policies obligate American Home and National Union to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' …during the policy period" and "caused by an offense arising out of [GEO's] business."  American Home and National Union are further obligated to "defend the insured against any 'suit' seeking those damages."

28. The American Home Policies for the 2004-2008 policy periods and the National Union Policies for the 2008-2013 policy periods define "Bodily Injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

29. In the National Union Policies for the 2013-2018 policy periods, the Bodily Injury Definition Extension Endorsement clarified and expanded the definition of "bodily injury" to mean "physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress."

30. By endorsement, the definition of "personal and advertising injury" was changed in the American Home Policy for the 2004-2005 policy period to:

> injury, including consequential 'bodily injury', including humiliation, mental anguish or shock, arising out of one or more of the following offenses:

5

      a.      False arrest, detention or imprisonment;
      b.      Malicious prosecution;

31. The American Home Policies for the 2005-2007 policy periods define "personal and advertising injury" to mean:

> injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
>     a.    False arrest, detention or imprisonment;
>     b.    Malicious prosecution;

32. By endorsement, the definition of "personal and advertising injury" was changed in the American Home Policy for the 2007-2008 policy period, and in each National Union Policy, to:

> injury, including consequential 'bodily injury', humiliation, mental anguish or shock, arising out of one or more of the following offenses:
>
>     a.    False arrest, detention or imprisonment;
>     b.    Malicious prosecution;

33. Beginning in 2010, the National Union Policies also contain a "Civil Rights Coverage Endorsement" (the "Civil Rights Endorsement"), which amends the Insuring Agreement of "Coverage A – Bodily Injury and Property Damage Liability":

> This insurance applies to "bodily injury" and "property damage" arising out of or relating to civil rights violations, so long as such violations and any and all resulting injury(ies) are not expected or intended from the standpoint of the insured or any person or organization either representing or acting on behalf of the insured.

34. The National Union Policies do not define the term "civil rights violations," or "civil rights" as used in the Civil Rights Endorsement.

## THE UNDERLYING LAWSUITS

### The Menocal Class Action

35. On October 22, 2014, nine plaintiffs filed a putative class action lawsuit against GEO in the U.S. District Court for the District of Colorado (the "Menocal Class Action"). The plaintiffs alleged that GEO owned and operated the Aurora ICE Processing Center in Aurora, Colorado (the "Aurora Location") pursuant to a contract with U.S. Immigration and Customs Enforcement ("ICE"). A copy of the complaint in the Menocal Class Action is attached as **Exhibit B**.

36. The Menocal Class Action originally sought certification of three proposed classes:

(1) Detainees who performed work at the Aurora Location in the Detainee Voluntary Work Program on or after October 22, 2012 and who asserted claims under the Colorado Minimum Wages of Workers Act, § 8-6-101, *et seq.* as implemented by the Colorado Minimum Wage Order, 7 Colo. Code Regs. § 1103-1;

(2) Detainees who were forced to perform uncompensated work at the Aurora Location under GEO's Housing Unit Sanitation policy on or after October 22, 2004 and who sought relief under the forced labor provision of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1595 (the "Forced Labor Class"); and

(3) Detainees who performed work at the Aurora Location in the Detainee Voluntary Work Program on or after October 22, 2012 and who asserted unjust enrichment claims under Colorado common law (the "Unjust Enrichment Class").

37. The Menocal Class Action complaint alleged three counts: (1) non-compliance with the Colorado minimum wage statute; (2) violation of the forced labor provision of the TVPA, 18

U.S.C. §§ 1589, 1595; and (3) unjust enrichment under Colorado common law.

38. On July 6, 2015, in a decision reported at *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129, 1135 (D. Colo. 2015), the U.S. District Court for the District of Colorado dismissed the first count and held that the underlying plaintiffs in the Menocal Class Action were not "employees" under the Colorado minimum wage statute or the Fair Labor Standards Act.

39. On February 27, 2017, the U.S. District Court for the District of Colorado certified the Forced Labor Class and the Unjust Enrichment Class.

40. On interlocutory appeal, on February 9, 2018, the United States Court of Appeals for the Tenth Circuit affirmed the certification of the two classes.

41. The Menocal Class Action complaint includes factual allegations of various harsh conditions of confinement, such as physical injury and physical restraint, including detention and imprisonment in solitary confinement if the detainees refused to work:

- "[GEO] provided or obtained the labor or services of Plaintiffs and others by means of physical restraint or threats of physical restraint to Plaintiffs and others. 18 U.S.C. § 1589(a)(1)." **Ex. B** at ¶ 76.

- "[GEO] provided or obtained the labor or services of Plaintiffs and others by means of serious harm or threats of serious harm to Plaintiffs and others. 18 U.S.C.§ 1589(a)(2)." *Id.* at ¶ 77.

- "[GEO] provided or obtained the labor or services of Plaintiffs and others by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer

8

serious harm or physical restraint, including solitary confinement. 18 U.S.C. § 1589 (a)(4)." *Id.* at ¶ 78.

42. The factual allegations concerning "physical restraint, including solitary confinement" clearly allege an offense of false detention or imprisonment.

43. The factual allegations of harsh conditions of confinement and forced labor clearly allege civil rights violations.

44. The Menocal Class Action seeks compensatory and punitive damages under 18 U.S.C. § 1595; mandatory restitution under 18 U.S.C. § 1593; reasonable attorneys' fees pursuant to 18 U.S.C. § 1595; and such other and further relief as may be necessary and appropriate.

## The Novoa Class Action

45. On December 19, 2017, Raul Novoa filed a class action against GEO in the U.S. District Court for the Central District of California (the "Novoa Class Action"). Mr. Novoa alleged that GEO owned the Adelanto ICE Processing Center (the "Adelanto Location") in Adelanto, California and operated the Adelanto Location pursuant to a contract with ICE. A copy of the original complaint in the Novoa Class Action is attached as **Exhibit C.**

46. On July 6, 2018, underlying plaintiff Novoa filed the First Amended Complaint (the "Novoa FAC") in the Novoa Class Action. A copy of the Novoa FAC is attached as **Exhibit D.**

47. On December 24, 2018, underlying plaintiffs Novoa and Jaime Campos Fuentes, who was also a former detainee at the Adelanto Location, filed the Second Amended Complaint (the "Novoa SAC") in the Novoa Class Action. A copy of the Novoa SAC is attached as **Exhibit E.**

9

48. On September 16, 2019, underlying plaintiff Novoa and three other underlying plaintiffs, who are current and former detainees of the Adelanto Location, filed the Third Amended Complaint (the "Novoa TAC") in the Novoa Class Action. A copy of the Novoa TAC is attached as **Exhibit F.**

49. The original complaint in the Novoa Class Action alleged five counts: (1) noncompliance with the California minimum wage statute, Cal. Labor Code §§ 1194, 1197, 1197.1; (2) unjust enrichment under California common law; (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) violation of the forced labor provision of the California Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code § 52.5; and (5) attempted forced labor constituting a violation of the federal TVPA, 18 U.S.C. §§ 1589(a), 1594(a).

50. The Novoa FAC and SAC complaints alleged the same five counts as the original complaint.

51. The Novoa TAC complaint alleged seven counts, the first four counts being the same as those in the original complaint and the other three counts alleging: (5) forced labor constituting a violation of the federal TVPA, 18 U.S.C. §§ 1589(a), 1594(a); (6) forced and attempted forced labor constituting a violation of the federal TVPA, 18 U.S.C. §§ 1589(a), 1594(a); and (7) retaliation.

52. On November 26, 2019, with further clarification on December 6, 2019, the California District Court certified three classes:

> (1) Detainees who performed work at the Adelanto Location since December 19, 2014 and who seek relief under counts 1 – 3 of the Novoa TAC complaint;

(2) Detainees who performed work at the Adelanto Location since May 1, 2011 and who seek relief under counts 4 – 6 of the Novoa TAC complaint; and

(3) Detainees who performed work at any civil immigration detention center owned or operated by GEO in the United States since December 19, 2007, who were subject to a GEO Housing Unit Sanitation policy, and who seek relief under counts 5 – 6 of the Novoa TAC complaint.

53. The second certified class includes two subclasses: (a) Adelanto Location detainees who performed work in the Voluntary Work Program; and (b) Adelanto Location detainees who performed work in the Uncompensated Work Program.

54. The Novoa TAC complaint alleges various harsh conditions of confinement, such as physical injury and physical restraint, including detention and imprisonment in solitary confinement and malicious prosecution of immigration violations with immigration court if the detainees refused to work:

- GEO withholds "necessary care from its detainees to ensure a ready supply of available labor needed to operate the Facility." **Ex. F** at ¶ 6.

- GEO had the policy or practice of "withholding sufficient food, water, and hygiene products from the immigrants detained at Adelanto." *Id.* at ¶ 43.

- GEO threatened "to place detainees who refuse to work into solitary confinement." *Id.* at ¶ 64.

- "At Adelanto and nationwide, GEO obtains compliance with its [Housing Unit Sanitation policies] by detained immigrants with serious harm, including actual or threatened physical restraint, physical assault such as pepper spray or use of force,

11

deprivation of legally required services such as recreation, law library, and telephone time; solitary confinement, and abuse of legal process, including reporting misbehavior to ICE or to the immigration court, and even criminal prosecution." *Id.* at ¶ 78.

- "GEO withheld daily necessities from Mr. Novoa, thereby forcing him to work for subminimum wages in order to buy those daily necessities for himself and avoid serious harm, including, but not limited to, malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement." *Id.* at ¶ 99.

- "During his detention, Mr. Novoa was often undernourished and dehydrated because GEO withheld sufficient food and water. He was also served rotten meat, moldy bread, and inedible produce." *Id.* at ¶ 100.

- "GEO withheld daily necessities from Mr. Campos Fuentes, thereby forcing him to work for subminimum wages in order to buy those daily necessities for himself and avoid serious harm, including, but not limited to, malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement." *Id.* at ¶ 127.

- "During his detention, Mr. Campos Fuentes was often undernourished and dehydrated because GEO withheld sufficient food and water. He was also served rotten meat, moldy bread, and inedible produce." *Id.* at ¶ 128.

- "GEO withheld daily necessities from Mr. Karim, thereby forcing him to work for subminimum wages in order to buy those necessities for himself and avoid serious harm, including, but not limited to, malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement." *Id.* at ¶ 151.

- "Mr. Karim was often undernourished and dehydrated because GEO withheld sufficient food and water. He was served dirty drinking water, rotten fruit, and undercooked chicken. Mr. Karim was rarely served fresh produce. As a result, he lost muscle mass and hair, and often felt dizzy and weak." *Id.* at ¶ 152.

- "As a direct and proximate result of GEO's forced labor practices, Plaintiffs and California Wage Class Members have suffered concrete harm and injury, including physical and emotional injury, monetary loss, and the unlawful violation of their rights." *Id.* at ¶ 207.

55. The factual allegations concerning "actual or threatened physical restraint" and solitary confinement if the detainees refused to work clearly allege an offense of false detention or imprisonment.

56. The factual allegations concerning "abuse of legal process, including reporting misbehavior to ICE or to the immigration court, and even criminal prosecution" if the detainees refused to work clearly allege malicious prosecution.

57. The factual allegations of harsh conditions of confinement and forced labor clearly allege civil rights violations.

58. The Novoa Class Action seeks disgorgement of GEO's profits resulting from detainees' labor and for its plaintiffs and the certified classes to be awarded declaratory and other equitable relief; injunctive relief; monetary damages and lost wages; reasonable litigation expenses and attorneys' fees; and any further relief that the court deems just and equitable.

### GEO's Claim for Coverage

59. GEO provided notice of the Menocal Class Action and the Novoa Class Action to

AIG Claims, Inc., which is the claims administrator for the American Home Policies and the National Union Policies, on July 27, 2020. GEO made its claim for coverage under the American Home Policies and the National Union 2008-2018 Policies.

60. On December 1, 2020, AIG (acting for American Home and National Union) belatedly denied any and all coverage under the American Home Policies and the National Union Policies for the Menocal Class Action and Novoa Class Action.

61. In particular, AIG denied any duty to defend GEO in the Menocal Class Action or the Novoa Class Action even though applicable law requires an insurance company to defend its policyholder from a lawsuit if there is any potential for insurance coverage.

62. Florida has the most significant relationship to this dispute because the insurance policies were issued to GEO in Florida, which is where GEO is incorporated and maintains its principal place of business and where AIG sent the coverage denial via email to GEO. Florida substantive law therefore applies to this action.

63. The Florida Claims Administration Statute ("FCAS"), Section 627.426, is applicable to policies delivered in Florida, including the American Home Policies and the National Union Policies, because Chapter 627 states that it does not apply to policies "not issued for delivery in this state," implying that the opposite is also true: the Chapter does apply to all insurance policies delivered in Florida.

64. Under Section 627.426(2)(a) of the FCAS, an insurance company cannot deny coverage unless it provides its policyholder with a written notice of its reservation of rights to assert a coverage defense within thirty days of when the insurance company knew or should have known of coverage defenses. In addition, Section 627.426(2)(b) of the FCAS requires the

14

insurance company to either appoint mutually-agreeable defense counsel, obtain a non-waiver agreement from its policyholder, or notify its policyholder of its decision to deny coverage within sixty days of receipt of a summons or complaint naming its policyholder as a defendant.

65. AIG, on behalf of American Home and National Union, did not provide GEO with a reservation of rights letter or its denial decision until December 1, 2020, more than one hundred and twenty days after it received notice of the underlying actions on July 27, 2020.  Because AIG failed to comply with Section 627.426 of the FCAS, AIG is therefore prohibited and estopped from denying coverage based on any defense to coverage defense that otherwise exists, including lack of timely notice.

66. Coverage B requires American Home and National Union to defend GEO against third-party claims seeking damages because of "personal and advertising injury," including consequential "bodily injury," humiliation, mental anguish or shock arising out of "[f]alse arrest, detention or imprisonment" and/or "malicious prosecution."

67. The underlying plaintiffs in the Menocal Class Action and in the Novoa Class Action alleged physical injury, emotional distress, humiliation, and pain and suffering, and alleged that they were subjected to solitary confinement, threats of solitary confinement, and other improper detentions and imprisonments.  The factual allegations fall potentially or actually within the coverage of the American Home Policies and National Union Policies, as the Menocal Class Action and Novoa Class Action both allege damages because of "personal and advertising injury," "including consequential 'bodily injury,' humiliation, mental anguish or shock arising out of" "[f]alse arrest, detention or imprisonment" and/or "malicious prosecution" occurring "during the policy period."

68. The inclusion of the Civil Rights Endorsement in the National Union 2010-2018 Policies evidences National Union's clear intent to extend coverage to allegations relating to civil rights violations made against GEO, which would include allegations of forced labor and attendant bodily harm.

69. Coverage A, as amended by the Civil Rights Endorsement in each of the National Union 2010-2018 Policies, requires National Union to defend GEO against third-party claims seeking damages because of "bodily injury" arising out of civil rights violations and occurring "during the policy period."

70. The allegations that GEO violated the forced labor provisions of the CTVPA and the federal TVPA, specifically 18 U.S.C. §§ 1589, 1595, are claims of civil rights violations against GEO, alleging injury during the policy periods of the National Union Policies.

71. Further, the Novoa TAC alleged that the underlying plaintiffs suffered malnutrition, undernourishment, and dehydration as a result of their conditions of confinement. At paragraph 101, the Novoa Class Action plaintiffs allegedly sustained "nausea or headaches" if they ingested the drinking water provided. At paragraph 152, Plaintiff Karim specifically alleged "he lost muscle mass and hair, and often felt dizzy and weak." At paragraph 207, the Novoa Class Action plaintiffs also alleged their harm and injury included "physical and emotional injury."

72. No exclusions apply under the circumstances to relieve American Home and National Union of their duties to defend GEO in relation to the Menocal Class Action and the Novoa Class Action. To the extent American Home and National Union contend any exclusion(s) apply, such exclusion(s) are ambiguous and inapplicable or are applicable to less than the entirety of the claims and damages alleged.

73. All conditions precedent to filing this action have occurred, been waived, or are the subject of an estoppel.

### COUNT I:  DECLARATORY RELIEF

74. GEO re-alleges paragraphs 1 through 73 as if fully set forth herein.

75. GEO made timely payment of all premiums and otherwise satisfied all conditions precedent for coverage under the American Home Policies and the National Union Policies.

76. The American Home Policies and the National Union Policies constitute valid and enforceable contracts.

77. American Home and National Union are therefore obligated to defend GEO with respect to the Menocal Class Action and the Novoa Class Action, but American Home and National Union continue to deny any and all coverage under the American Home Policies and the National Union Policies.

78. Accordingly, an actual and justiciable controversy exists between American Home and National Union and GEO for which a declaratory judgment setting forth their respective rights and obligations under the American Home Policies and the National Union Policies in relation to the Menocal Class Action and Novoa Class Action is necessary and appropriate.

### COUNT II:  BREACH OF CONTRACT

79. GEO re-alleges paragraphs 1 through 78 as if fully set forth herein.

80. GEO made timely payment of all premiums and otherwise satisfied all conditions precedent for coverage under the American Home Policies and the National Union Policies.

81. The American Home Policies and the National Union Policies constitute valid and enforceable contracts.

82. The American Home Policies and the National Union Policies obligate American Home and National Union to defend GEO in the Menocal Class Action and the Novoa Class Action.

83. American Home and National Union failed to perform their obligations under the American Home Policies and the National Union Policies, thereby breaching the policies, when they denied all coverage for GEO in the Menocal Class Action and the Novoa Class Action and refused to pay any of the costs and expenses of defending GEO in the Menocal Class Action and the Novoa Class Action.

84. As a direct, foreseeable, and proximate result of American Home's and National Union's breach of the American Home Policies and the National Union Policies, GEO has suffered damages and continues to suffer damages.

**WHEREFORE**, Plaintiff The GEO Group, Inc., requests entry of judgment in its favor and against Defendants American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, PA, as follows:

(1) Declaring the rights and obligations of the parties with respect to the issues described above, including a declaration that American Home and National Union have an ongoing duty to defend GEO in the Menocal Class Action and in the Novoa Class Action;

(2) For compensatory damages in an amount to be proven at trial;

(3) For all pre- and post-judgment interest as may be provided by law;

(4) For reasonable attorneys' fees, and costs as provided by law; and

(5) For such other and further relief as the Court deems just and proper, under the circumstances.

## TRIAL BY JURY

GEO demands a trial by jury on all issues so triable as a matter of right.

Dated this 14th day of January, 2021.

        Respectfully submitted,

        **LEVIN SITCOFF PC**

        *s/ Bradley A. Levin*
        Bradley A. Levin
        1512 Larimer Street, Suite 650
        Denver, Colorado 80202
        Telephone: (303) 575-9390
        Fax: (303) 575-9385
        bal@levinsitcoff.com

        Timothy P. Law
        **REED SMITH LLP**
        Three Logan Square
        1717 Arch Street, Ste. 3100
        Philadelphia, PA 19103
        Telephone: (215) 851-8100
        Fax: (215) 851-1420
        tlaw@reedsmith.com

        Matthew B. Weaver
        **REED SMITH LLP**
        1001 Brickell Bay Drive, 9th Floor
        Miami, Florida 33131
        Telephone: (786) 747-0200
        Fax: (786) 747-0299
        mweaver@reedsmith.com
        *Counsel for Plaintiff*

**Plaintiff's Address:**
4955 Technology Way
Boca Raton, FL 33431